Mr. Copley, whenever you're ready. May it please the court. My name is William Copley and I'm here on behalf of the appellants in this matter, Relators Lyle Beauchamp and Warren Shepard. My clients brought this False Claims Act case to recover money that Academi caused the State Department to pay by falsifying its personnel's qualifications with certain required weapons. We're here today because the District Court erred when it applied the False Claims Act's public disclosure bar to dismiss the Relators' claims, even though the Relators pled Academi's weapons scheme more than a year before it was allegedly publicly disclosed in a Wired.com article. At base, the public disclosure bar asks a very simple question. Who spoke first? Did the Relator allege the scheme in the action before it was publicly disclosed? And in here, it's virtually uncontested that the Relators spoke first. They alleged Academi's weapons scheme on May 24th, 2010, in their first amended complaint. The alleged public disclosure, the Wired.com article, happened a year later on July 16th, 2012. And yet, the Relator applied the bar to my client's claims because it said it had to look only at the amended complaint because my clients amended their complaint after the public disclosure. But that was an unprecedented error. We are unaware of a single other court that has ever applied the public disclosure bar to bar a claim that was pled before it was publicly disclosed. Does it matter how sufficiently it was pled in the first instance? I think what matters, Your Honor, is was the fraud brought to light? And so I think you would look to the same factors you look at to say, was it publicly disclosed, as to say whether it was sufficiently alleged in the action. Here is what we alleged, my clients alleged in their first amended complaint. They alleged the true state of affairs, which is that Academi routinely failed to qualify its personnel with the M240 and M249 machine gun. They alleged the misrepresented state of affairs. They alleged that Academi made up scores for its personnel and certified those false scores to the State Department. They alleged specific dates on which the false certifications occurred. They also alleged that it led to false billing, that Academi was knowingly billing the State Department for personnel that were not qualified under the contract. That was more than sufficient, Your Honor, to bring the fraud to light, which is all that the public disclosure bar requires. It doesn't require anything more. And once those allegations have been sufficiently made, it doesn't matter what happens after that. The relator then has that allegation of fraud. And the district court erred because it held that if it's publicly disclosed after that and the relator amends, that somehow that bars their claim and makes a claim that wasn't parasitic when it was originally filed into a parasitic claim. Well, the district court relied on the Supreme Court's decision in Rockwell. So tell us why that was incorrect. All right. There's two reasons, Your Honor. First, the district court looked to the wrong part of Rockwell, where the Supreme Court addressed the very language we're talking about today. In Rockwell, the relator argued that the court, and it was considering a different issue, which was whether or not the relator had direct and independent knowledge for the original source requirement. The relator said, you should only look to my original complaint, not to my amended complaint, to determine what allegations I had to have direct and independent knowledge of. And the Supreme Court rejected that argument, but it's important why. The Supreme Court did so based on the plain language of the statute. It said the statute, the public disclosure bar, doesn't talk about allegations in a complaint. It doesn't mention an original complaint or an amended complaint. It simply refers to allegations in the action, i.e. allegations simpliciter. So all allegations in the action matter. So the district, Rockwell actually requires this court to reverse the district court below because it rejected an interpretation of allegations in the action as limited to any particular complaint. It held that all allegations in the action matter, which means it mattered when our clients alleged Academy's fraud a year before it was publicly disclosed, and the court erred by ignoring those allegations merely because the relators later amended their complaint. Additionally, Your Honor, if you look at the parts of Rockwell that the district court relied upon, they were talking about a different topic. The Rockwell in the Supreme Court, when you look at the other part that the district court and Academy talk about, was talking about what are the allegations, what are the operative allegations of which a relator must have direct and independent knowledge to qualify as an original source under what is now 3730E4B2 and what was the sole original source provision. And there it said you have to look at the operative allegations. You can't allow a relator to rely upon allegations they made in an earlier complaint but have dropped in their current complaint to provide original source status. You have to have direct and independent knowledge of the operative allegations. They also said you can't allow a relator to use knowledge of one scheme to get original source status regarding another scheme. But those common sense holdings have nothing to do with the preliminary analysis of whether or not the public disclosure bar was triggered in the first instance. In fact, that issue wasn't even before the court in Rockwell because the relator in that case conceded that his was addressing a very different question. The fact that you can't allow a relator to rely upon abandoned allegations or to use knowledge of one scheme to establish original source status over a different scheme in no way, shape, or form suggests that the district court in this case should have decided it based on a fiction and ignored the fact that the relators alleged the scheme at issue a full year before it was allegedly publicly disclosed. So your view of the language of the district court's opinion where he says a contrary rule would leave the relator free to plead a trivial theory of fraud for which he has some direct and independent knowledge and later amend the complaint to include theories copied from the public domain, that's actually not incorrect, but it doesn't apply in this context. That's absolutely right, Your Honor, because what the Supreme Court there was saying is if you have a small fraud, if you say that there's this one fraud over which the government is being defrauded for $100,000, and I have direct and independent knowledge of that, and then a newspaper comes out, and that's fraud A, and discusses fraud B, where they're defrauding the government for $10 million, you can't allow a relator to then amend their complaint to add fraud B and say that they're an original source for that. But nothing in the opinion says that you somehow would lose your standing to continue to pursue fraud A, the smaller, narrower, trivial theory of fraud of which you did have direct and independent knowledge. And also, Your Honor, it was just dealing with a different question. It was talking about original source. It wasn't talking about whether or not the public disclosure bar was triggered in the first instance. Well, I don't know that you're, I hope you're not conceding that this is a trivial fraud. Absolutely not, Your Honor. I was just using the language of the Supreme Court's opinion when it talked about direct and independent knowledge of a trivial theory of fraud versus a different theory of fraud that's added from a public disclosure. I would also point out, Your Honor, that the district court's decision is irreconcilable not only with the plain language of the provision, and this is true regardless of whether it applies the pre-amendment version or the post-amendment version, because they both start with the fundamental question of who spoke first. But it's also contrary to the legislative history. It's clear that Congress wanted to accomplish two things in the 1986 amendment when it created the public disclosure bar and replaced what was a broader government knowledge bar. It wanted to encourage more key TAM actions, and it wanted to deter parasitic claims. Well, what the district court did by looking only to the amended complaint to determine not what are the operative allegations, but when did the relator allege the scheme before or after a public disclosure, what it did was it dismissed a non-parasitic claim. It wasn't parasitic when my clients first brought it, and it couldn't become parasitic merely because they amended their complaint after a public disclosure. So it dismissed a potentially valuable claim, which goes against what Congress was trying to accomplish in goal one, with doing nothing to foster what it was trying to do in purpose two, which is to deter parasitic actions. Now, Your Honor, I would like to turn to the second error the district court made, because the district court not only erred in determining that the public disclosure bar had been triggered in this case, even if that had been true and it's not, the district court further erred in ruling that the relators in this case are not original sources. And the reason is because the relators in this case repeatedly voluntarily disclosed the frauded issue to the government before the public disclosure occurred. And here the court's analysis could be a little different based on whether or not it applies pre-amendment version or the post-amendment version. Under the pre-amendment version statute, these voluntary- And the district court made no distinction here, is that right? That's right, Your Honor. Well, the district court appeared to be applying the post-amendment version to all of the conduct. Academy has argued that the pre-March 23, 2010 conduct that they committed should be judged under the prior version of the act. Do you agree? Your Honor, I think there's a disagreement among the court's decisions. I think what's settled is that the amendment's not retroactive and that the effect of conduct should be determined based on the laws that existed at the time. I see a split in this court's authority as to what conduct you look to under 3730E4, whether or not it's the defendant's conduct, which is what this court indicated in May, or if it's the conduct that's actually referred to in 3730E4 itself, which is the filing of the complaint and the public disclosure, which in Ahumada and Rossholder appeared to be the conduct that the court looked to. In this case, it doesn't matter to my client because the court has to reverse under either basis. And this is true even with respect to the trigger of the bar, because they both asked who spoke first, and also with respect to the evidence of the voluntary disclosures. If my clients voluntarily disclosed the fraud to the government before Robert Winston and Alan Wheeler filed their complaint, before the Wired.com article, the allegations cannot have been derived from those public disclosures, whereas under the amended version of the statute, it applies the broader substantially similar, but it added a new original source provision that says if you voluntarily disclosed the fraud to the government before it's publicly disclosed, you're automatically an original source and can go forward. So either way, because my clients voluntarily disclosed the fraud to the government before it was publicly disclosed, they have a right to go forward with their action, and the public disclosure bar doesn't bar their claims. And they did it in at least four different ways that are verifiable on the record. In their first amended complaint, in the evidentiary disclosures that they served with that first amended complaint. Weren't they required to do that by statute? They were not required, Your Honor, to file the first amended complaint. There was no obligation whatsoever for them to file a complaint bringing those actions. But they were required to make the disclosures. They were required to make the disclosures under the statute, but they weren't required to file the complaint. So you'd have to still look at whether or not that was a voluntary act. And the district court cited two cases for that it wasn't voluntary. Is there any case law that supports that the filing of the complaint is a voluntary disclosure? What there is, is there is, here's how I would answer that, Your Honor. There is, there is, there is authority that we cite in our brief that, hold on, hold on. Either there is or there isn't. Which one is it? There is authority that providing a draft copy of the complaint before you file it is a voluntary disclosure. So that, that is the closest I have as authority. Well, Your Honor, but that was under the prior version of the statute. The reason why you'd have to give an advanced copy under the old version of the statute is because there was a temporal requirement in the original source provision that said you had to provide the public disclosure, or you had to voluntarily provide the disclosure before the action was filed. So you had to provide an advanced copy there to meet the temporal requirement. In the new 3730B-2, the temporal requirement is different, or B-1, I'm sorry, is, is different. It requires simply the disclosure be before the public disclosure. And here the filing took place before the public disclosure. But let me, let me set aside those, though, because there's one point that. Which filing do you say occurred before the public disclosure? The first amended complaint, Your Honor. So you've kind of made a circular argument, it seems there to me, that you're going back to the actual filing of the complaint, and I thought your answer to Judge Diaz, even though in a slightly different context, was there was no case law that verified the filing of a complaint accounted for the disclosure to the government. Well, but part of the reason why there's no case law is because we're in this bizarre world where the, the filing of the first complaint wasn't an allegation in the action. If the filing of the first complaint's an allegation to the action, you would never get to this point. It's only because the district court made that erroneous ruling that we're in this odd world where there is no precedent. It's, that's why, that's why it should be an allegation in the action, but if it's not, it's a voluntary, voluntary disclosure. But even if we set aside the complaint and the evidentiary disclosures, there were two other voluntarily, voluntary disclosures that occurred before the public disclosure in this case that the district court simply overlooked. The first was the April 2012 disclosure email. That was an email that was sent by the Relators Council to Diana Younce, who was the DOJ attorney assigned to investigate this case on behalf of the, of the government. And in that email, she said, the Relators Council said, and this is on page 767 of the record, I want to identify for you two individuals who were firearms instructors with Academy and were fired for disclosing the very same allegations that the Relators have made in this case. They are important because they corroborate the allegations of our Relators that Academy was falsifying weapons scores. That was in April of 2012, three months before the disclosure. After that, then, that was just the beginning. The Relators then brought Winston Wheeler to the DOJ to be interviewed by Ms. Younce and representatives of the State Department in detail about their experiences, again, as corroborating witnesses. And the district court didn't just, didn't find that this evidence was insufficient or lacked credibility or was flawed in any way. It simply held that it didn't exist. And that's contrary to an unambiguous record. On page 920 of the appendix, he said, the only disclosures that Relators allege they made to the government were the evidentiary disclosures sent with the First Amendment complaint. And that simply isn't true, Your Honor. We block quoted the April 2012 disclosure email in our brief, and the affidavit was submitted. I see the amount of time, Your Honors. I thank you. And I would ask the Court to reverse and re-mail. Ms. Lee. Thank you. Good morning. My name is Tara Lee. I'm on behalf of Defendant Apelli Academy. We're here because Judge Ellis dismissed a complaint that had been amended with public information. And the key question, and I think Judge Agee asked it as the first question of opposing counsel while he was arguing, is this interpretation of the Rockwell rule and whether Ellis was correct in his enunciation of that rule. You'll notice from the briefs that the two sides here have pretty strikingly different opinions of Rockwell. I got very good advice about 20 years ago from a very smart judge when I was a brand new lawyer, and he said if two sides come into my courtroom and they have vastly different reads of a majority opinion, go read the dissent. It will help you understand what the majority thought about and rejected. And if you look at the dissent in Rockwell, I think it resolves for you what the majority opinion stands for. Justice Stevens wrote a dissent that's especially helpful because it specifically forewarns against potential amendment chilling impacts of the Rockwell majority rule. It's a remarkably similar parade of horribles to the one that you see and hear from Apellis in this case. What the dissent noticed about the Rockwell rule is that this rule requires courts to evaluate a public disclosure, an original source, Ketam case, every time the complaint is amended, and they noted this will interfere with the ability to tailor complaints. They thought about that, they considered that, and when they weighed what rule they were going to come up with, they decided they were okay with that result. They issued a rule that says a relator just may not plead a trivial theory of fraud for which he has some direct and independent knowledge, and later amend that complaint to include theories and details copied from public domain. Well, I mean, Rockwell dealt with the original source doctrine primarily, not the public disclosure bar, and dissents often parade horribles in front of their colleagues in the majority to get them to think about the scope of the majority opinion. I don't know that the majority opinion goes as far as you suggest it does. Well, I think what the dissent offers is some insight into what you have to do in any public disclosure case. You have to balance, on the one hand, the idea that the government has an interest in empowering the public to expose fraud, and on the other hand, as you see in so many cases, we have also an interest in preventing parasitic actions and opportunistic actions. What is parasitic about this action? I mean, the relators came forward, they had the information through their own investigation, and they simply amended their complaint to add some additional information, which as I understand it, is primarily related to the terms of the contract. What is parasitic about allowing that action to proceed in this context? Well, you can see in everything that was before Judge Ellis where they drew their parasitic information from. He identified the disclosures in the Wired article that were public, and the Wired article relies on the Winston and Wheeler complaint, which I will note just briefly, under the pre-2010 versions of the False Claims Act language, that Winston and Wheeler complaint, in all of its specificity, would have counted as a public disclosure. When Judge Ellis was applying only the new law, he wasn't looking at Winston and Wheeler. So as you were noting in the back and forth in the last argument, when you are splitting that statute and applying it to the time of the conduct as it occurred, for conduct prior to March 23, 2010, you are including also Winston and Wheeler, which I think is important because it's pretty parasitic. It's a cut and paste of 30 straight paragraphs. Of the contract. Not just of the contract. Of the specific knowledge, and that's not a small detail, by the way, because without knowledge of how the contract works, you don't have knowledge of fraud. You have an idea. Well, that may go to the legal sufficiency of the claim in the first instance, but it doesn't, to my mind anyway, address whether or not the litigators in the first action had sufficient independent knowledge of the fraud which they are alleging. Well, I think that matters. I think your point there is a really strong one, Judge Diaz, because what you note is that it goes to the legal sufficiency of that complaint, would it have stood alone, and Judge Ellis noted in his opinion that it would not, it wasn't sufficient, and if it isn't, that's what you have to decide, big picture, is do you want that conduct to be okay? To have an insufficient claim, and to be allowed to go out into the public domain and harvest from the internet or any place else you can find things, and put it in your new amended complaint and do so and still escape a public disclosure problem? Does it matter how significant or trivial the amendment is that, you know, they change a caption in an amended complaint, is that enough to? Well, I think when you're looking at the new language in the statute, you're going to have to find it was substantially the same. What you'll notice Judge Ellis found specifically as a fact finding is that it was strikingly similar and substantially the same, which in his case might be because you're looking at 30 cut and pasted paragraphs and that's fairly straightforwardly strikingly similar, or it could be something on that scale, but it isn't going to be, I think, what you described, one small change that was derived from something you get in the public domain. I think that's where our fact finding judges will have to apply the judgment that we want them to apply when they're applying that legal standard, and they'll make those findings. I think it's important to note that Judge Ellis did make certain factual findings in the course of this opinion, and what you are looking at now is his opinion in light of Purdue Pharma, which came out, I think, three months after his opinion, and Purdue Pharma said with some clarity, the jurisdictional stripping language is now gone from the statute, number one. His line in his opinion that says, this is a jurisdictional bar, can't be right. You've got that to address relative to his opinion. Purdue Pharma also says, you can't apply this retroactively, so I think derived from that is the very legitimate conclusion that you've got to take the version of statute that applied during the contract. Now, you go and look at Judge Ellis' opinion and map it out. The period of alleged contact expands the amendment of the statute, doesn't it? It splits it. We have to do some sort of a bifurcated analysis here. I'll be honest with you, maybe when I was younger, my brain was fresher. That would have been an exciting challenge, but when I looked at that, I felt like my brain was going to explode. It's a little bit of neurosurgery. Welcome to our world. Yeah. I don't envy you, but I do think it's possible. I wish I had a whiteboard, because you can actually map it like one of those four-square analysis, because you've got two columns. One is the rules that apply before March 23, 2010, and then the rules that apply after. Then you've got two rows. One is the rules about the public disclosure bar, and one is the rules about original source. You can map through those four squares with Judge Ellis's factual findings and affirm his opinion. Even though he did apply the wrong law in some portions of that square? He did. I think what you have to do, and what is within your purview to do, is look at his opinion and say he applied the wrong legal standard. We will now apply the correct legal standard, which courts in the First Circuit have held . . . Why don't we just tell him what the correct legal standard is and let him do that? Those are your two choices, I think, Your Honor. You can remand it back to him with the correct legal standard and tell him to apply those facts to it. That's what we did in Purdue in the following cases. I do. You know what I thought was interesting? I think you could have done that in a one-sentence opinion, and you wouldn't have needed this exercise today much, as I do enjoy this. You could have, in one sentence, said, remanding back to Judge Ellis in light of Purdue Pharma, consider Purdue Pharma's new rule . . . Well, maybe our heads were hurting as much as you were, so we were hoping you all could clear it up. I think that's right. Here's what I'd point you to when you're looking at Judge Ellis's opinion, because this is an estimable judge. He writes footnote 23, which to me reads like Dear Fourth Circuit, in case I'm wrong about this jurisdictional bar rule of law. He says, what I would have done on these facts, if the public disclosure bar is not jurisdictional as I have found that it is, I would have just converted this by Rule 56 into a motion for summary judgment, and my rulings would come out the same. I think you can do that here on the facts that are in the appellate record, and I think you can . . . You have to give the parties notice if you're moving back and forth like that, that you're going to do a summary judgment decision. I think this, because it straddles, and because Purdue Pharma came out three months later, is no kidding a little complicated. There's some neurosurgery in it, and this is going to happen, but only for a short period of time. While that split is possible, it's going to be very complicated for judges, and I think this would be the kind of opinion that if you took it and you resolved it, because there's plenty of reason to affirm this, there is a real decision that you're asked to make that hovers above all of this, that says, can you let a plaintiff make a bare allegation lacking specificity as Judge Ellis observed? What was so bare about this? Well, it was seven sentences. I don't think it goes to Siena. I think it's missing, as Judge Ellis determined, some of the things that would have needed to survive on its own. Yeah, that's a Rule 9 analysis that says nothing about the public disclosure bar. Well, I think Rockwell is out there, right? The plaintiffs and their counsel are making a decision to change and substitute and amend their complaint, and we're either going to incentivize the behavior that says, I'm going to go gather from the world because I want to aggregate, and I want to opportunistically gather, especially in situations where you have lots of actions, lots of attention, lots of media interest about particular activities. Do you want that to be the thing that happens? Or was all of this originally intended to benefit the government, not relators, but what is in the interest of the government? Do you want to have every single relator who might have a trivial idea or a bare allegation that wouldn't survive on its own to now be incentivized to go out and collect from the public domain anything that they can find without ever running afoul of the public disclosure bar? I just don't think that's what the case law points you towards as a result. I think this case, because of the way it came up and the timing and the straddling, gives you the opportunity to explain these legal issues in a way that gives guidance to the district courts, because we're seeing a lot of these public disclosure bar, collected information, opportunistic, some call them parasitic actions, where they get to the third and fourth and fifth amended complaint before they have something that can go forward. The question is, how much do you want to let them collect? What do you really want to incentivize? There's a scale of relators. When you look at these original source cases, it's an exception, right? It's the original source exceptions of public disclosure bar. On one end of the scale, you have the true white hat hero guys who have exposed fraud and their original source activity is like they went to the FBI and $80 million of fines were awarded and a criminal investigation was started and people were pleading guilty all over the place and lakes are being saved and stuff like this. That's the extreme end here. The other end is the relator who is filing his own complaint and it's a, me too, I want a piece of that, kind of, there might be a false claims act here and I can be a relator to it. That's the other extreme. Every relator is going to fit somewhere on that scale. There's a spectrum of behavior. When you look at the kinds of cases where an original source exception, whether you're using the old version of the law or the new version of the law, is granted. It's the heroic guy. It's the separate from my own complaint, here's this other thing I did and when you see the amendments being made to the false claims act, they're sort of capturing that, right? They're going in the direction of, look, filing your own complaint, that's not what we meant. Doing your mandatory disclosures in service of your complaint, not what we meant and here, the only issue that's identified as a potential dispute of fact in all of the findings that Judge Ellis applied to the rule of law that he had selected is this question of original source status and of all the things that plaintiff appellants have identified, they fit basically into the category of, I filed my complaint and I did my mandatory disclosures and my lawyers did three other things. The existence of those facts is not something either party disputes, what we each dispute is the effect of those facts and I don't think that's the kind of thing that you have to remand back to have resolved by a district court judge so that you can apply the right rule of law to it. I think the existence of those facts is what it is and what is to be decided is what is the right rule of law given those particular activities and do they or do they not qualify? I think when you go through that analysis, you can affirm this dismissal. It is described by plaintiffs appellees as a harsh result because they had some knowledge in the first place, but what they had was a non-viable description of something that might have been a fraud. It wouldn't have been enough by itself. It became enough later when they pulled from the public domain and that opportunistic amendment works a public disclosure well. Let's assume we disagree with you with respect to public disclosure, what's your, of course you've got the separate issue of whether or not they were an original source. So why is the filing of the complaint not a voluntary act on the part of the plaintiffs? Well I think when you're in that row that I have for original source, you've got to do it because our time frame straddles under both standards. So under the original source rules that were before 2010, you're going to have one analysis and I think you can take Judge Ellis' findings of fact to get there. And then under the original source rules that apply after March 23rd, 2010, you can take Judge Ellis' findings and apply them to that. And pre-2010, you're asking did they have direct and independent knowledge? And then you can look at Ahumada who applied that standard and note that you also aren't supposed to get that direct knowledge from some intervening agency. And I think that rule eliminates all of the examples that were given. The first amended complaint which no case law has ever held counts as that kind of exception creating voluntary disclosure under the original source rule. Has a case said that it can't be? I don't have a case, well actually, give me a moment. I believe what we've cited to one, and I could be mistaken, but that has done that kind of analysis to eliminate an original source exception from the pre-March 23rd, 2010 direct and independent knowledge requirement. I know that Ahumada looked at the directness of the knowledge and cited to Grayson for the rule that you can't have intervening agency that creates that knowledge. And I think that gets you there if you supply that reasoning to the idea of the filing of complaint and whether or not it counts. And fundamentally, I revert back to why we have an original source exception. Who we're trying to save and reward. And I would suggest it's the white hat guys, not the ones that are just pursuing an opportunistic false claims act that they've conglomerated. That's not what the exception's for. So I think pre-March 23rd, 2010, the result is fairly straightforward. And that's the law that Ellis had applied to get where he got. If you also, excuse me, my apologies, I also got the date backwards. He used the post-March 23rd, 2010 language and came to that result. You can get to the pre-original source language with the analysis that I just went through, going through the independent and direct requirement. And in post- But he didn't do that. He applied only the post law. So I think what you would be looking at- So why are we doing that in the first instance? Well, you have both, you have conduct that straddles both. So he's giving you- Right, I understand that. But if he applied the wrong standard to the pre-March 2010 conduct, why are we doing that in the first instance here instead of sending it back to the district court? I think you can send it back for him to do it, but I think there's enough in the record that you don't have to. I think that there are findings of fact that you can rely on, and there's a rule of law that's clear, and there's actually a lot of case law for how to apply that old standard because it's come up a lot. You have two Fourth Circuit cases, for example, who were affirmed at the Fourth Circuit when they denied leave to amend based on the amendment being pulled from the public domain. So these analysis have been wound through in that pre-language sufficiently that I think there's plenty for this court to take from his findings that he made- What's the difference between ruling on a denial of a motion to amend and applying it to the facts of the case for the substantive ruling on the merits? I appreciate that. And actually, in my notes, I had said, be careful, do not overstate that because it's a abuse of discretion rule when you're looking at the leave to amend. And they are. When they're denying leave to amend, they're looking at it for an abuse of discretion. But this is just not something that I would suggest needs an evidentiary hearing about it. We know what the facts will come out to be, and I think now, thanks to the Purdue Pharma opinion, we know how to properly address the law. I think you can issue an opinion that gives that back to Judge Ellis and tells him to do that, but I think if you look at footnote 23 of his opinion, it's fairly clear how that's likely to come out, and maybe we can avoid yet another one of these cases going back down, coming back up, and being around forever. I would suggest to you that it is a fair and consistent with the U.S. Supreme Court's guidance result to have this dismissal be affirmed. Thank you. Mr. Copley. Thank you, Your Honors. I'd like to start out by talking about how, under either version of the statute, and I'll since this was where we left off, was the pre-amendment version, I'll start there. My clients are the white hat guys. They are exactly the paradigmatic whistleblowers that Ms. Lee was referencing in her presentation. If this Court's going to apply the pre-amendment version to Academy's older conduct, then it has to look to whether or not the relator's allegations were actually derived from the public disclosures. And here's how the Court can know that, in this case, they were not actually derived from the public disclosures. And this applies to the Winston Wheeler complaint or to the Wired.com article. The record in this case establishes that my clients learned of Academy's fraud by being personnel on the ground in Afghanistan participating in the very fraudulent weapons qualifications that are the subject of this complaint. This Court should look not only to the First Amendment complaint, but also to the evidentiary disclosures that were attached, if it's going to do the based upon or derived from analysis. There, they identified by name four different firearms instructors who did the false certifications. They attached copies of scorecards where scores were made up. There were very specific details based on their personal experiences in Afghanistan that went into these complaints. Ms. Lee would have this Court just assume that because there was a complaint filed after a public disclosure that it was based upon those. That simply isn't true. It's not true with respect to the fundamental aspects of the scheme, and it's not even true with respect to the relator's knowledge of Robert Winston and Alan Wheeler and their examples. If you look to the disclosures that were made to the Department of Justice, they are very specific that the relators knew of Robert Winston and Alan Wheeler and their experiences before their complaint was filed. They disclosed those to Diana Youms at the Department of Justice before they were ever filed. They could not have been derived from the later filed Winston complaint, much less from the Wired.com article, because they were disclosed to the government before that. They were disclosed in interviews the Relators Council orchestrated and flew Robert Winston and Alan Wheeler in to be interviewed as corroborating witnesses. All of this happened. All of this was known long before Robert Winston and Alan Wheeler filed their complaint and Wired.com wrote an article about it. So there's no doubt in this case that the allegations were not based upon. The only evidence they can cite to for this based upon notion is that, yes, there were 30 paragraphs in the complaint that were similar from the Winston and Wheeler retaliation claim and the second event complaint. But those pertain solely to describing the contracted issue. It's no different than if you have a false claim to that case in the Medicare context and an attorney uses the same boilerplate language to describe the Medicare scheme and the anti-kickback statute. Yes, they're going to describe those sources, which are already in the public domain. A statute's in the public domain. A regulation's in the public domain. The WHIPS contract we're talking about is in the public domain. You can Google it. The contract itself, the source of the legal obligations, is not what matters. That is the sort of innocent information that courts have repeatedly said doesn't matter for purposes of the public disclosure bar. What matters is the fraud. Ms. Lee could not stand up here and identify a single element of the fraud itself that the relators learned from either the Winston and Wheeler complaint or from the Wired.com article. There's no aspect of the fraud that was not already alleged and disclosed in the First Amendment complaint and the evidentiary disclosures. If you look at... Well, in fact, it's not clear to me that the Wired.com article did anything more than copy and paste the allegations of the complaint of the second complaint in this case. That's right, Your Honor. And one thing that it also did was that it specifically referenced the Wired.com article, the First Amendment complaint in this case. There's a reference to this case. It was described as there's already a case pending about Academy not qualifying its personnel with the belt-fed weapons. That's a reference to this case in the Wired.com article itself. One of the perverse aspects of the district court's decision is the district court held that a public disclosure that referenced the prior allegations in this case barred those allegations as parasitic. That makes absolutely no sense, Your Honor. The other thing I'd just briefly point out is Academy's only response to the Winston and Wheeler... to the disclosures in the April 2012 email and the interviews by the Department of Justice is that somehow they say this was just the relators representing Winston and Wheeler. It wasn't... I'm sorry, the Relators Council representing Winston and Wheeler. It wasn't representing the relators themselves. Your Honor, that's irreconcilable by the record. You know that because of the plain text of the April 2012 disclosure email itself, which is all about disclosing corroborating witnesses to the DOJ attorney responsible for investigating. And that attorney had no reason to speak to Winston and Wheeler because they only brought a 3730H claim for retaliation, not a key TAM claim. So there was no reason for the DOJ attorney to be talking to Robert Winston and Alan Wheeler other than as corroborating witnesses in this case disclosed by these relators. I thank this court for their time and I would ask this court to reverse the district court's unprecedented, erroneous misconstruction of the public disclosure bar and to remand so that my clients can pursue their valid claims. Thank you, Your Honors. Keep going. Keep going. Keep going. Okay, we'll come back to Greek Council and then go on to our last case.
judges: William B. Traxler, Jr., G. Steven Agee, Albert Diaz